**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**TINA BOMBE d/b/a**
**PATIENT CENTERED BEHAVIORAL**
**STAFFING, LLC,**

                  Plaintiff,

v.

**LAPEER COUNTY COMMUNITY**
**MENTAL HEALTH**, a Governmental
Agency, and BROOKE SANKIEWICZ
in her individual and official capacities,
jointly and severally,

                  Defendants.

Case No.:          cv

Honorable

---

**MILLER COHEN P.L.C.**
Keith D. Flynn (P74192)
Yvonne E. Tirakian (P86598)
*Attorneys for Plaintiff*
7700 Second Avenue, Suite 335
Detroit, MI 48202
(313) 964-4454
kflynn@millercohen.com
ytirakian@millercohen.com

---

**COMPLAINT AND DEMAND FOR TRIAL BY JURY**

There is no other civil action pending in this
Honorable Court or any other Court arising out
of the same transaction and occurrence.

*/s/ Yvonne E. Tirakian*

NOW COMES Plaintiff, **TINA BOMBE**, doing business as **PATIENT CENTERED**

**BEHAVIORAL STAFFING, LLC,** by and through her attorneys **MILLER COHEN P.L.C.** and for

her Complaint against Defendant **LAPEER COUNTY COMMUNITY MENTAL HEALTH** states as follows:

### INTRODUCTION

1.   Plaintiff Tina Bombe was employed as a psychiatric mental health nurse practitioner for Defendant Lapeer County Community Mental Health from December **7,** 2023, to July 24, 2024. Defendant Lapeer County Community Mental Health is a public body that receives local, state, and federal funding to provide mental health services to individuals in its community, regardless of their ability to pay. Defendant Brooke Sankiewicz is responsible for making agency decisions on behalf of Defendant Lapeer County Community Mental Health. Plaintiff Bombe's role was to prescribe psychiatric medication to consumers receiving services from Defendant Lapeer County Community Mental Health.

From the very beginning, Plaintiff Bombe was pressured to prescribe medication to every consumer during her first appointment with them, regardless of whether Defendant LCCMH's records included an up-to-date list of all medications that the consumer was currently taking. Without access to a consumer's complete medication history, Plaintiff Bombe could not make an informed decision about which medications to prescribe without risking harm to the consumer. Plaintiff Bombe raised repeated concerns about the lack of medication history and pleaded with Defendants to implement changes to ensure that she could safely perform her duties.

Plaintiff Bombe's initial concern led her to discover that Defendants directed their agents and employees to falsely attest that information about consumer medication history was being documented, even though it was not. These false attestations were used to support claims for reimbursement from Medicare and Medicaid. Plaintiff Bombe made her concerns known to numerous individuals who worked for Defendant Lapeer County Community Mental Health, including Defendant Brooke

Sankiewicz, who ultimately fired her for pretextual reasons. Plaintiff Bombe's employment was terminated because she voiced valid concerns about the collective Defendants' failure to implement policies to protect the health and safety of consumers in their care, as well as its promulgation of an unwritten policy requiring its agents and employees to make false statements to the state and federal government. Plaintiff Bombe lost her livelihood because she had the integrity to advocate for the safety and wellbeing of the vulnerable consumers in her care. Additionally, Plaintiff learned that no good deed goes unpunished when she summoned the courage to oppose Defendants' policy requiring her to knowingly make false statements in exchange for kickbacks from Medicare and Medicaid.

Defendants' actions violated Plaintiff Bombe's constitutional rights under the First Amendment to the United States constitution and the Michigan Whistleblowers' Protection Act. Furthermore, and in the alternate, Defendants' actions violated the Contracts Clause of the United States constitution and the common law prohibition against termination in violation of public policy. Plaintiff Bombe is the kind of person that these laws are meant to protect. Accordingly, Plaintiff Bombe brings this action seeking a full remedy for damages arising from Defendants' illegal conduct.

## PARTIES

2.  Plaintiff Tina Bombe, doing business as Patient Centered Behavioral Staffing, LLC ("Bombe") is an individual residing in the State of Michigan, County of Genesee, within the jurisdiction of the Eastern District of Michigan.

3.  Defendant Lapeer County Community Mental Health ("LCCMH") is a public body that employed Plaintiff Bombe until her termination on July 24, 2024.

4.  Defendant Brooke Sankiewicz ("Sankiewicz") is the Chief Executive Officer ("CEO") for Defendant LCCMH, a position she held at the time of Plaintiff Bombe's termination.

5.    Defendant LCCMH is not immune from this suit because it is defined as an employer under the Michigan Whistleblowers' Protection Act ("WPA"), which provides for a cause of action against it and its agents. M.C.L. §15.361(b).

6.    Defendant Sankiewicz is not immune from this suit because she is defined as an employer or agent of an employer under the WPA. *Id.*

7.    Immunity is not available to Defendant LCCMH for Plaintiff Bombe's remaining claims.

8.    Immunity is not available to Defendant Sankiewicz for Plaintiff Bombe's remaining claims.

## JURISDICTION AND VENUE

9.    For the federal causes of action, jurisdiction is appropriate in this court in accordance with 28 U.S.C. § 1331.

10.    For the state causes of action, supplemental jurisdiction is appropriate under 28 U.S.C. § 1367.

11.    Venue is appropriate in this Court in that all parties are located in and all events in controversy took place in the Eastern District of Michigan.

## STATE FUNDING OF MENTAL HEALTH SERVICES

12.    In Michigan, mental health services for individuals with severe mental illness are delivered through Community Mental Health Services Programs ("CMHSPs").  CMHSPs are created by county governments and financed by state, federal and county funds. M.C.L. §§1202; 1204; 1206.

13.    A county electing to create a CMHSP must also establish a county community health board. ("Board").  *See* M.C.L. § 330.1212.  The Board's powers and duties include, among other things, the examination and evaluation of the county's mental health needs, identifying the services necessary to meet those needs, submission of the CMHSP's annual budget to the Department of Mental Health, and approval and authorization of all contracts for the providing  of services.  *See* M.C.L. § 330.1226

*et seq.*

14.   Each CMHSP Board appoints an executive director responsible for executing its policies and procedures. M.C.L. § 330.1230. The executive director acts as the chief executive and administrative officer of a CMHSP. *Id.* The executive director is responsible for the supervision of all CMHSP employees. *Id.*

15.   Defendant LCCMH acts as both the CMHSP and the Board for Lapeer County.

16.   Defendant Sankiewicz is the acting executive director for Defendant LCCMH.

17.   The Michigan Department of Community Health ("MDCH") contracts with CMHSPs through ten (10) Prepaid Inpatient Health Plans ("PIHPs"). MCL §330.1232b *et seq.* PIHPs operate as CMHSPs' Medicaid-managed care plans and each PIHP serves as the sole primary health plan for specialty services in its area. *Id.* PIHPs are responsible for provider network management, service authorization and utilization management, claims payment, access management, customer services, appeal and grievance systems, information technology, quality management, risk management and compliance monitoring. *Id.*

18.   Defendant LCCMH is one of four single-county CMHSPs that are managed by the Region 10 PIHP ("Region 10").

**PLAINTIFF BOMBE'S EMPLOYMENT WITH DEFENDANTS**

19.   While it has the option to subcontract with independent mental health services providers, Defendant LCCMH provides services itself by hiring providers to work at its facility located at 1570 Suncrest Drive, Lapeer, MI 48446.

20.   At the time of Plaintiff Bombe's hire, Defendant LCCMH's CEO was Lauren Emmons, who eventually retired in late January of 2024. Defendant Sankiewicz went on to replace Lauren Emmons as CEO for Defendant LCCMH sometime in February of 2024.

21.   Plaintiff Bombe was hired as a psychiatric mental health nurse practitioner on December 7, 2023.

22.   Defendant LCCMH employed Plaintiff Bombe ostensibly as an independent contractor pursuant to a "Professional Services Agreement" ("Agreement"). (Exhibit 1 – Professional Services Agreement)

23.   While the Agreement specifies that it is between Defendant LCCMH and "Patient Centered Behavioral Staffing, LLC (Tina Bombe)," Plaintiff Bombe was treated as an individual employee for Defendant LCCMH.

24.   Plaintiff Bombe did not maintain, nor did she operate, her own practice or other business outside of her employment with Defendant LCCMH.

25.   Plaintiff Bombe was employed full-time by Defendant LCCMH, with a schedule that was set by Defendant LCCMH.

26.   Defendant LCCMH compensated Plaintiff Bombe at a fixed hourly rate.

27.   Plaintiff Bombe provided services to consumers on behalf of and at the direction of Defendant LCCMH.

28.   Plaintiff Bombe's performance was monitored on an ongoing basis by Defendant LCCMH's management, as well as Defendant Sankiewicz.

29.   Plaintiff Bombe worked under the direct supervision of Defendant LCCMH and its agents, as well as Defendant Sankiewicz.

30.   Plaintiff Bombe was required to abide by Defendant LCCMH's policies and procedures, as well as the policies and procedures for CMHSPs within Region 10.

31.   The Agreement specified that Defendant LCCMH could terminate Plaintiff Bombe's employment upon written notice for any of seven (7) reasons, but not without written notice (Id).

32. Defendant LCCMH maintained additional policies, procedures, and guidelines for addressing performance issues with its employees.

33. Defendant LCCMH's policies made clear to Plaintiff Bombe that employees would be given warnings and opportunities to correct poor behavior or performance prior to being terminated, unless they displayed egregious conduct that posed an immediate threat to the health and safety of consumers.

34. Plaintiff Bombe was initially credentialed with "provisional" (limited) privileges through the Community Health Automated Medicaid Processing System ("CHAMPS"), which meant that she had to undergo a probationary period before receiving "full" (unlimited) privileges to prescribe medication on behalf of Defendant LCCMH.

35. One of Defendant LCCMH's policies required its clinical staff to use the Optimal Alliance Software Information System Electronic Health Record ("OASIS EHR") to document their encounters with Defendant LCCMH's consumers.[1]

36. The Centers for Medicare and Medicaid Services "CMS" uses data collected through the OASIS EHR to determine whether the services rendered by Defendant LCCMH include certain quality measures, otherwise known as Electronic Clinical Quality Measures ("eCQMs").

37. The performance or nonperformance of eCQMs is used by CMS to determine whether Defendant LCCMH is eligible for reimbursement for claims made to Medicare and Medicaid.

38. Defendant LCCMH also used OASIS EHR as a portal for its staff to send internal emails and other communications about consumers' records.

39. When staff for Defendant LCCMH see a consumer for an in-person or telehealth appointment, they are supposed to document the appointment by submitting an "encounter" in the

---

[1] The term "consumer" is used throughout this Complaint synonymously with the term "patient" to refer to individuals who receive services and treatment from Defendant LCCMH.

consumer's OASIS HER.

40.    Plaintiff Bombe underwent limited training to learn how to use OASIS EHR when she first started work for Defendant LCCMH.

41.    From the very beginning of her employment, Defendant LCCMH's management and staff emphasized the importance of clicking or selecting the medication reconciliation button (the "Medication Reconciliation Button") when submitting an encounter[2] for a consumer in the OASIS EHR.

42.    On one occasion, Plaintiff Bombe asked Ben George, ("George") one of Defendant LCCMH's IT staff who helped lead the training, what medications were being "reconciled" when clicking or selecting the Medication Reconciliation Button.

43.    Ben George told Plaintiff Bombe to just make sure the Medication Reconciliation Button was always clicked or selected in the OASIS EHR upon submission of each and every consumer encounter.

44.    Plaintiff Bombe was instructed to prescribe psychiatric medication during her initial appointment with each consumer.

45.    Sometime in January of 2024, Plaintiff Bombe noticed that the OASIS EHR did not contain complete medication history for several consumers prior to her first appointment with them.

46.    "Complete medication history" includes but is not limited to an updated list of medications that the consumer is currently taking, including those prescribed by their primary care physician ("PCP") or another non-Defendant LCCMH provider.

47.    Every consumer's complete medication history is supposed to be readily available in the OASIS EHR for Plaintiff Bombe to review prior to the day of the consumer's first scheduled

---

[2] The word "encounter" is used throughout this Complaint to reference written documentation submitted to OASIS EHR by Defendant LCCMH's healthcare providers after seeing or treating a consumer.

appointment with her.

48. Plaintiff Bombe was alarmed when she encountered missing, outdated, or incomplete medication history information in OASIS EHR because, without that pertinent information, she was unable to make an informed decision about the proper psychiatric medication to prescribe.

49. Moreover, without access to adequate documentation of a consumer's complete medication history in OASIS EHR, Plaintiff Bombe ran the risk of prescribing a psychiatric medication that could cause the consumer harm by way of drug interactions, unwanted side effects, or adverse drug reactions ("ADRs").

50. In her nearly five years of experience prescribing medication prior to working for Defendant LCCMH, Plaintiff Bombe had *never* encountered a situation where she was required to prescribe medication without being able to review a consumer's medication history prior to their appointment.

51. Plaintiff Bombe voiced concerns, both verbally and via email using the OASIS EHR portal, about the significant risk of bodily harm to consumers as early as January of 2024.

52. Plaintiff Bombe continued to make regular complaints in the months that followed.

53. Plaintiff Bombe made internal complaints either verbally or via email through OASIS EHR to various staff members, including but not limited to:

      a.      Dr. Sarah Steinacker, Medical Director and Collaborating Physician

      b.      Leann Daniels, Nurse Manager

      c.      Lisa Jolly, Recipients Rights Officer

      d.      Bridget Bond, Integrated Health Liaison

      e.      Samantha Brown, Therapist

      f.      Jackie Collins, Therapist

g.      Diane Tunison, Case Manager

h.      Sarah Whitehead, former Nurse Manager

i.      Clinician Scheduling Staff (Non-Clinical Staff) – Mary Bachelor, Mindy Patrick, Jackie (Jacklyn) Thomas, Natashia Grapentin and Debbie Ruhlman

j.      Laura Moore, Chief Operating Officer ("COO")

k.      Current and former Nursing staff – Christine and Diamond, whose last names are unknown to Plaintiff Bombe at this time.

54.   Sometime in March of 2024, Plaintiff Bombe met with Lisa Jolly, Recipient Rights Officer ("Jolly").

55.   Jolly told Plaintiff Bombe that, if she didn't prescribe medication at the initial psychiatric evaluation for each consumer, she could face a Recipient's Rights complaint.

56.   Plaintiff Bombe became emotional as she told Jolly how afraid she was to prescribe medication to consumers without first reviewing their complete medication history.

57.   Plaintiff Bombe expressed her fear that, without complete medication history, doing what Defendant LCCMH was asking her to do could lead to harm to a consumer.

58.   In late March of 2024, Plaintiff Bombe spoke via telephone with Debbie Ruhlman, ("Ruhlman") a non-clinical employee for Defendant LCCMH.

59.   During their conversation, Plaintiff Bombe learned that Ruhlman was working remotely to "help out" the coder for Defendant LCCMH who was known as "Shuri" or "Suri."

60.   According to Ruhlman, Defendant LCCMH tasked her with reviewing each consumer encounter in OASIS EHR to: (1) Ensure that the start and end time documented by the clinical staff matched the start and end time documented by the clinician scheduling staff, and (2) to make sure the Medication Reconciliation Button was clicked or selected.

10

61. Following her conversation with Ruhlman, Plaintiff Bombe discovered that OASIS EHR would display the following message when she hovered her mouse over the "information" icon next to the Medication Reconciliation Button:

> This includes ALL known prescriptions, over-the-counters, herbals, and vitamin/mineral/dietary (nutritional) supplements. It is required to review the medications' name, dosage, frequency and route of administration

62. The displayed message next to the Medication Reconciliation Button stated, "This includes ALL known prescriptions, over-the-counters, herbals, and vitamin/mineral/dietary (nutritional) supplements. It is required to review the medications' name, dosage, frequency and route of administration."

63. Plaintiff Bombe immediately realized that the Medication Reconciliation Button constituted a clinical staff member's attestation that they had reviewed and updated all known medications for each consumer, including all known prescriptions, over-the-counters, and herbals, vitamin/mineral/dietary (nutritional) supplements, as well as the name, dosage, frequency, and route of administration for each medication.

64. In the majority of her consumer encounters, Plaintiff Bombe *only* had knowledge of the psychiatric medications that she prescribed because the consumer's OASIS EHR did not contain adequate or complete information about any other medications they were also taking.

65. Plaintiff Bombe investigated further and discovered that the Medication Reconciliation Button was used to report that Defendant LCCMH's clinical providers were performing a CMS eCQM known as CMS68v13.

66. Defendant LCCMH receives incentive payments from CMS/Medicare and Medicaid when

it demonstrates compliance with eCQMs like CMS68v13.

67.   Plaintiff Bombe realized that clicking or selecting the Medication Reconciliation Button when documenting an encounter in OASIS EHR resulted in a report that Defendant LCCMH was entitled to incentive payments for completing the eCQM CMS68v13.

68.   Once she knew that clicking or selecting the Medication Reconciliation Button without having access to the complete medication history information constituted a false claim to CMS/Medicare and Medicaid, Plaintiff Bombe would only click or select it when accurate, updated documentation of a consumer's complete medication history was present in the OASIS HER.

69.   Plaintiff Bombe began to routinely call attention to missing or inaccurate medication history documentation by documenting any deficiencies she encountered while completing consumer encounters.

70.   From that point forward, Plaintiff Bombe refused to click or select the Medication Reconciliation Button when she encountered inaccurate or missing documentation of a consumer's complete medication history in the OASIS EHR.

71.   Over time, Plaintiff Bombe noticed that another OASIS EHR user was altering her consumer encounter submissions by clicking the Medication Reconciliation Button after she purposely left it unclicked or unchecked.

72.   On or about April 18, 2024, Plaintiff Bombe attended the Quarterly Physicians' Meeting in person at Defendant LCCMH's facility.

73.   The following individuals were present at the meeting on April 18, 2024:

a.      Defendant Sankiewicz, CEO

b.      Dr. Sarah Steinacker, LCCMH Medical Director and Collaborating Physician,

c.      Laura Moore, COO

d.      Lisa Ruddy, LCCMH Corporate Compliance Liaison and Quality Improvement Supervisor

e.      Porcha Mosley, LCCMH Nurse Practitioner

f.      Mandi Brace, LCCMH Administrative Support Services Manager

g.      Elaina Garvonic, Genoa Pharmacist

h.      Sue Sullivan, LCCMH Registered Nurse

i.      Dr. Sharmalie Sarvananda, Psychiatrist

74.   Plaintiff Bombe shared the information she found about how the eCQM CMS68v13 was linked to the Medication Reconciliation Button and definition of "medication reconciliation" with the attendees at the meeting.

75.   Plaintiff Bombe asked the meeting attendees if anyone knew why the OASIS EHR for many of the consumers transferred to her care were either missing or contained outdated, inaccurate, or incomplete medication history, yet a review of the OASIS EHR often indicated that the Medication Reconciliation Button had been clicked during previous encounter(s) with the same consumer.

76.   Plaintiff Bombe also noted that it appeared that her encounters were being altered by someone else to reflect that the Medication Reconciliation Button had been clicked for certain encounters when she had intentionally left it unclicked and documented the deficiencies medication history information in OASIS EHR.

77.   In response to her concerns, several of the meeting attendees scoffed at Plaintiff Bombe.

78.   Plaintiff Bombe expressed her grave concerns about the health and safety of consumers, including but not limited to the risks of ADRs leading to harm.

79.   Several of the attendees, including Defendant Sankiewicz, suggested that it was not Plaintiff Bombe's responsibility to raise such concerns, stating "your job is to prescribe medication."

80. After the meeting, Plaintiff Bombe provided Defendant Sankiewicz with a hard-copy printout of information explaining the way that the CMS eCQM was integrated into the OASIS EHR.

81. The meeting minutes from April 18, 2024, do not include all of the concerns about the Button that Plaintiff Bombe shared about threats to consumer health and safety, as well as false reports of performance of eCQM CMS68v13.

82. Instead, the meeting minutes characterize Plaintiff Bombe as complaining about "feeling she has gotten a lot of push back on getting medication history and medication history."

83. Defendants made no changes to address the concerns that Plaintiff Bombe raised during the meeting.

84. Plaintiff Bombe was so desperate to have proper documentation that she created forms for consumers to fill out *during* their initial and follow-up appointments so that she could enter their complete medication history information in the OASIS EHR and click the Medication Reconciliation Button upon submission of their encounter.

85. On or about June 4, 2024, Amy Morrison from Human Resources informed Plaintiff Bombe that Defendant LCCMH's Credentialing Committee had decided to re-credential her from "provisional" (probationary) to "full" (unrestricted) privileges for an additional two-year period based on her qualifications, knowledge, skill, and performance since the date of her hire.

86. If Plaintiff Bombe's performance had been unsatisfactory, Defendant LCCMH's Credentialing Committee would not have elevated her status from "provisional" to "full" privileges for an additional 2-year period.

87. On or about June 12, 2024, Plaintiff Bombe spoke on the telephone with Ruhlman about the Medication Reconciliation Button again.

88. Ruhlman was still working remotely for Defendant LCCMH, making sure the Medication

Reconciliation Button was clicked for every consumer encounter documented in the OASIS EHR.

89.   The initial purpose of the call was because "someone" whom Ruhlman would not name told her to instruct Plaintiff Bombe to remove certain information from one of her consumer encounters in OASIS EHR.

90.   The conversation shifted and Plaintiff Bombe told Ruhlman that, since discovering the relationship between the Medication Reconciliation Button and the eCQM CMS68v13, she no longer clicked the Medication Reconciliation Button when submitting a consumer encounter if the OASIS EHR did not contain adequate documentation of the consumer's complete medication history.

91.   Plaintiff Bombe then shared her new process of including any deficiencies in medication history she observed in her encounters in the OASIS EHR.

92.   Plaintiff Bombe had noticed that Ruhlman's name was often associated with changes made to her encounters after she submitted them.

93.   Plaintiff Bombe noticed these changes most often when she had to revisit a consumer's OASIS EHR for a follow up appointment several days after their initial appointment.

94.   Plaintiff Bombe believed that Ruhlman was altering her encounters by clicking the Medication Reconciliation Button, even though she left it unclicked – and her reasoning for leaving it unclicked in the consumer encounter itself – on purpose.

95.   Plaintiff Bombe hovered her mouse over the "information" icon next to the Medication Reconciliation Button in the OASIS EHR and read the definition contained in the message verbatim to Ruhlman over the phone.

96.   Accordingly, Plaintiff Bombe told Ruhlman that the Medication Reconciliation Button was supposed to be a *clinical provider's* attestation that they had performed eCQM CMS68v13 by verifying all known prescriptions, over-the-counters, herbals, and vitamin/mineral/dietary (nutritional

15

supplements) as well as the medication name, dosage, frequency, and route of administration.

97.   During their conversation, Plaintiff Bombe noticed that Ruhlman sounded shaken and concerned about what she told her.

98.   Ruhlman said that when she was clicking on the Medication Reconciliation Button that she thought she was simply reviewing the psychiatric medications that Defendant LCCMH providers had prescribed for the consumer in OASIS EHR.

99.   Ruhlman said that she was not aware that the medications to be "reconciled" before clicking the Medication Reconciliation Button included *all* medications, over-the-counters, and supplements that the consumer was taking.

100.   At some point during the conversation, Ruhlman noted that she had noticed that Plaintiff Bombe had stopped clicking the Medication Reconciliation Button.

101.   Ruhlman said "I did not realize what that button meant" several times during their phone call.

102.   Ruhlman also repeatedly said "I was only doing what I was told," several times during her phone conversation with Plaintiff Bombe.

103.   Ruhlman wondered aloud about why she was being instructed by Defendants to click the Medication Reconciliation Button to which Plaintiff Bombe replied by suggesting that Ruhlman ask the CEO (Defendant Sankiewicz).

104.   Ruhlman told Plaintiff Bombe that she was going to call the CEO [Defendant Sankiewicz] and then ended their call.

105.   Ruhlman and Plaintiff Bombe never spoke again after that date.

106.   On or about June 17, 2024, Kristen Little ("Little") was hired as a new psychiatric nurse practitioner.

107.   During the first week of Little's employment, she told Plaintiff Bombe that she had not yet passed her state board examination.

108.   Little was permitted to see consumers beginning in early July of 2024, but she could not prescribe medication until her formal certification was issued.

109.   According to Michigan's Licensing and Regulatory Affairs ("LARA") database, Little received her Nurse Specialty Certification on July 9, 2024.

110.   Upon knowledge and belief, Little was still waiting to receive "provisionary" credentials, so she could not prescribe medication immediately after receiving her Nurse Specialty Certification.

111.   On July 18, 2024, Plaintiff Bombe attended another quarterly physician's meeting, this time via zoom.

112.   During the July 18, 2024, meeting, the minutes from the April physician's meeting were reviewed.

113.   Little, who was still in training, stated that she thought it was important to have documentation of the complete medication history in OASIS EHR.

114.   Unlike Plaintiff Bombe, however, Little did not express any criticism of Defendant LCCMH during the meeting.

115.   On July 24, 2024, at around 7:00 pm, Defendant Sankiewicz and Morrison from Human Resources walked into Plaintiff Bombe's office.

116.   Defendant Sankiewicz handed Plaintiff Bombe a letter stating that she was terminated effective immediately.

117.   Plaintiff Bombe asked Defendant Sankiewicz and Morrison why she was being terminated, but she was simply told to reference Article D of her contract [Agreement].

118.   Plaintiff Bombe stated that she thought the Board was involved in the decision to

17

terminate someone.

119. "I am the Board," replied Defendant Sankiewicz.

120. Plaintiff Bombe was directed to immediately pack up her belongings and turn in her laptop, phone, badge, and keys before leaving the premises.

121. Plaintiff Bombe stated that she still had open charting to complete for consumers in OASIS EHR requested time to finish it.

122. In response to Plaintiff Bombe's request, Defendant Sankiewicz told her not to worry about it, saying, "what you have in there is fine."

123. On July 26, 2024, Plaintiff Bombe sent an email to Defendant LCCMH's upper management requesting: (1) Written confirmation that Defendant Sankiewicz denied her the ability to complete her unfinished documentation, (2) the reason for her termination under Article D, (3) a copy of her personnel file, and (4) compensation for the five (5) hours of pay that were missing from her most recent paycheck.

124. Defendant Sankiewicz replied to Plaintiff Bombe's email stating, "Your employee file will be available for pickup on Wednesday, July 31 at the front desk. The paycheck you're referencing below was deducted by five hours due to the agency closing for staff development at 12pm on Thursday, June 27."

125. At no point in time had Plaintiff Bombe been made aware that she would not be compensated **for her work,** nor was she invited to attend staff development day.

126. Prior to picking up her employee file on July 31, 2024, Plaintiff Bombe sent a detailed email to Region 10 outlining the concerns she had voiced throughout her employment and requested that it launch a formal investigation into the fraudulent activity that she witnessed during her employment.

127.   When Plaintiff Bombe picked up her employment file on July 31, 2024, she was also handed two sealed envelopes.

128.   The first envelope contained a letter from Defendant Sankiewicz dated July 30, 2024, providing notification pursuant to the Bullard-Plawecki Employee Right to Know Act that a Summary Report on a Recipient Rights complaint in which Plaintiff was involved was being sent to a third party.

129.   The second envelope also contained a letter from Defendant Sankiewicz, this time dated July 31, 2024, stating that she was terminated due to "inadequate performance," and that her "work performance has not met the standards of LCCMH."

130.   The employee file provided to Plaintiff Bombe by Defendants LCCMH and Sankiewicz did not include any documentation of poor performance.

131.   Moreover, Plaintiff Bombe had never faced any disciplinary action, received any verbal or written reprimands, nor received any other notification evidencing a need for corrective action during her time at Defendant LCCMH.

132.   Upon knowledge and belief, Plaintiff Bombe was the only employee for Defendant LCCMH who refused to knowingly make false statements to CMS and ultimately Medicare and Medicaid on behalf of Defendant LCCMH.

133.   Upon knowledge and belief, Plaintiff Bombe was the only employee at Defendant LCCMH who criticized practices that she believed threatened the health and safety of the very consumers they treated.

## COUNT I – VIOLATION OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION – 42 U.S.C. § 1983 – ALL DEFENDANTS

134.   All preceding paragraphs are incorporated by reference as though fully stated herein.

135.   The First Amendment of the United States Constitution provides for Plaintiff Bombe's right to freedom of speech.

136.   Plaintiff Bombe's First Amendment rights are made applicable Defendants through the Fourteenth Amendment of the United States Constitution.

137.   Congress created a cause of action for a violation of an individual's constitutional rights under 42 U.S.C. § 1983.

138.   At all times relevant hereto, Plaintiff Bombe was a "citizen(s) of the United States or other person(s) within the jurisdiction" entitled to bring suit under 42 U.S.C. § 1983.

139.   Plaintiff Bombe engaged in protected conduct when she reported a matter of public concern to Defendant LCCMH and its members, including Defendant Sankiewicz.

140.   According to Defendant Sankiewicz, Plaintiff Bombe's statements were not made pursuant to her duties as a public employee nor were they made as a means to carry out her employment responsibilities.

141.   Plaintiff Bombe's statements concerned the health and safety of consumers who received care from LCCMH, as well as reports that false claims were being made to CMS/Medicare and Medicaid.

142.   Plaintiff Bombe's statements did not impair Defendants' ability to conduct daily operations efficiently and effectively.

143.   Defendant Sankiewicz is clothed with authority to execute the functions of Defendant LCCMH, including supervision, hiring, and firing of all staff, pursuant to state law.

144.   Defendant Sankiewicz's decision to terminate Plaintiff Bombe's employment is representative of the policy, custom, or practice of Defendant LCCMH.

145.   Plaintiff Bombe's termination was the result of a policy, custom, and/or practice maintained by Defendants to deprive its agents and employees of their constitutional right to speak freely about matters of public concern.

146.   As a direct proximate cause of Defendants' unlawful conduct, Plaintiff Bombe sustained and will continue to sustain injury and damages, including but not limited, to the deprivation of her rights under the U.S. Constitution.

**WHEREFORE**, Plaintiff requests judgment holding Defendants liable for compensatory damages including but not limited to: back pay, front pay or reinstatement, embarrassment and humiliation, pain and suffering, harm to reputation and any other such relief that this Court deems just and equitable.  Plaintiff Bombe also requests an award of punitive and exemplary damages as well as attorney's fees and costs.

## COUNT II – VIOLATION OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION – 42 U.S.C. § 1983 – DEFENDANT SANKIEWICZ

147.   All preceding paragraphs are incorporated by reference as though fully stated herein.

148.   Defendant Sankiewicz was the final decisionmaker in the decision to terminate Plaintiff Bombe's employment.

149.   Defendant Sankiewicz abused her authority by terminating Plaintiff Bombe for exercising her First Amendment right to freedom of speech regarding matters of public concern.

150.   As a direct proximate cause of Defendant Sankiewicz's unlawful conduct, Plaintiff Bombe sustained and will continue to sustain injury and damages, including but not limited, to the deprivation of her rights under the U.S. Constitution.

**WHEREFORE**, Plaintiff Bombe requests declaratory judgment holding Defendant Sankiewicz liable for violating the United States constitution; compensatory damages including, but not limited to: back pay, front pay or reinstatement, embarrassment and humiliation, pain and suffering, harm to reputation and any other such relief that this Court deems just and equitable. Plaintiff Bombe also seeks an award of punitive and exemplary damages as well as attorney's fees and costs.

<u>**COUNT III –**</u>
<u>**MICHIGAN WHISTLEBLOWERS' PROTECTION ACT – MCL §§ 15.361 *et seq***</u>

151.    All preceding paragraphs are incorporated by reference as though fully stated herein.

152.    Plaintiff incorporates by reference all preceding paragraphs.

153.    Plaintiff Bombe reported a suspected violation of law, regulation or rule, promulgated by the state and federal governments, when she reported that Defendant LCCMH's practices threatened the health and safety of their consumers.

154.    Alternatively, Plaintiff Bombe reported a suspected violation of law, regulation, or rule promulgated by the state and federal governments, when she reported that Defendant LCCMH's policy surrounding the Medication Reconciliation Button constituted making false claims to CMS/Medicare and Medicaid.

155.    Defendants LCCMH and Sankiewicz are public bodies as defined under the Whistleblowers' Protection Act. MCL §§ 15.361(d)(iii) and (iv).

156.    Defendants LCCMH and Sankiewicz did conspire to threaten to discriminate and in fact did discharge Plaintiff Bombe for reporting suspected violation(s) of state and federal law to a public body.

157.    As a direct proximate cause of Defendants' unlawful conduct, Plaintiff Bombe sustained and will continue to sustain injury and damages.

**WHEREFORE** Plaintiff requests that this Honorable Court to grant her all available compensatory damages, jointly and severally, for economic injury, extreme mental and emotional distress, humiliation, outrage, economic damages, loss of employment opportunity, harm to reputation, loss of earning capacity, punitive and exemplary damages, and all other damages that she is entitled to by law; grant Plaintiff's reasonable attorney's fees and costs incurred in this litigation; and grant all such

further relief available under Michigan's Whistleblower Protection Act and any other such relief as shall meet equity and good conscience.

## COUNT IV – VIOLATIONS OF THE CONTRACTS CLAUSE OF THE UNITED STATES CONSTITUTION – 42 U.S.C. § 1983 – ALL DEFENDANTS

158.  All preceding paragraphs are incorporated by reference as though fully stated herein.

159.  At all times relevant hereto, Defendants and their agents and employees were individuals acting under color of State law.

160.  At all times relevant hereto, Plaintiff Bombe was a "citizen(s) of the United States or other person(s) within the jurisdiction" entitled to bring suit under 42 U.S.C. § 1983.

161.  The Constitution of the United States provides that "[n]o State shall…pass any…law impairing the obligation of contracts." U.S. Const. Article I, Sec. 10, Cl. 1.

162.   The rights and protections of the Contracts Clause are fully applicable to state action. U.S. Const. Amendment XIV.

163.  Defendants' Agreement to provide advance written notice of its intent to terminate Plaintiff Bombe's services created enforceable contract rights within the meaning of the Contracts Clause.

164.  Under the terms of the Agreement with Plaintiff Bombe, Defendants were contractually obligated to provide written notice of its intent and reasoning for terminating Plaintiff Bombe's contract.

165.  Moreover, under the explicit terms of the Agreement and the implied terms based on the conduct of the Parties, Plaintiff Bombe's services could *only* be terminated for good cause.

166.  The reasons given by Defendants for terminating the Agreement with Plaintiff Bombe are pretextual and do not amount to good cause.

167.    Defendants violated the Contract Clause of the United States Constitution when they took actions impairing their contractual obligation to provide written notice of good cause to end its Agreement with Plaintiff Bombe.

168.    Acting under color of state statute, ordinance, custom and regulation, including Defendant LCCMH's policy and custom, Defendant Sankiewicz and Defendant LCCMH have caused the deprivation of rights, privileges or immunities secured by the Contracts Clause.

169.    Defendants' unilateral decision to terminate its Agreement with Plaintiff Bombe without prior written notice and without showing good cause diminishes the benefit of its contract with Plaintiff Bombe, has no legitimate public purpose, and/or constitutes an abuse of power.

170.    The actions at issue substantially impair the provisions in Plaintiff's contractual Agreement with Defendants.

171.    Defendant Sankiewicz is clothed with authority to execute the functions of Defendant LCCMH, including entering into contracts with providers of mental health services.

172.    Defendant Sankiewicz's decision to terminate the Agreement with Plaintiff Bombe is representative of the policy, custom, or practice of Defendant LCCMH.

173.    As a direct and proximate result of Defendants' actions, Plaintiff Bombe sustained and will continue to sustain injury and damages, including but not limited, to the deprivation of her rights under the U.S. Constitution.

**WHEREFORE**, Plaintiff Bombe requests declaratory judgment holding Defendant Sankiewicz liable for violating the United States constitution; compensatory damages including, but not limited to: back pay, front pay or reinstatement, embarrassment and humiliation, pain and suffering, harm to reputation and any other such relief that this Court deems just and equitable. Plaintiff Bombe also seeks an award of punitive and exemplary damages as well as attorney's fees and costs.

## COUNT V - VIOLATIONS OF THE CONTRACTS CLAUSE OF THE UNITED STATES CONSTITUTION – 42 U.S.C. § 1983 – DEFENDANT SANKIEWICZ

174. <u>All preceding paragraphs are incorporated by reference as though fully stated herein.</u>

175. Defendant Sankiewicz was the final decisionmaker in the decision to terminate the Agreement with Plaintiff Bombe.

176. Defendant Sankiewicz abused her authority by terminating the Agreement with Plaintiff Bombe without providing written notice of good cause for her decision.

177. As a direct proximate cause of Defendant Sankiewicz's unlawful conduct, Plaintiff Bombe sustained and will continue to sustain injury and damages, including but not limited, to the deprivation of her rights under the U.S. Constitution.

**WHEREFORE**, Plaintiff Bombe requests declaratory judgment holding Defendant Sankiewicz liable for violating the United States constitution; compensatory damages including, but not limited to: back pay, front pay or reinstatement, embarrassment and humiliation, pain and suffering, harm to reputation and any other such relief that this Court deems just and equitable. Plaintiff Bombe also seeks an award of punitive and exemplary damages as well as attorney's fees and costs.

## COUNT VI - TERMINATION IN VIOLATION OF PUBLIC POLICY – COMMON LAW – ALL DEFENDANTS

178. All preceding paragraphs are incorporated by reference as though fully stated herein.

179. A violation of public policy occurs when, "a statute specifically prohibits the discharge, the employee is discharged for refusing to violate the law, or the employee is discharged for exercising a well-established statutory right." *Suchodolski v. Michigan Consol. Gas Co.,* 412 Mich. 692 (1982).

180. As described above, Plaintiff Bombe complained that Defendants' failure to ensure that proper medication history was documented for consumers in OASIS EHR threatened the health and safety of those consumers.

181.   Pursuant to the Michigan Mental Health Code, Defendants, their employees, and agents owe legal duties to the consumers they serve. MCL §§ 330.1700 *et seq.*

182.   Alternatively, Plaintiff Bombe opposed a practice that required her to make false claims to CMS/Medicare and Medicaid.

183.   It is unlawful to knowingly make or cause the making of a false claim to Medicare or Medicaid pursuant to both state and federal law. M.C.L. §§ 752.1001 *et seq.* and 31 U.S.C. §§ 3729 *et seq.*

184.   At all times relevant, Plaintiff Bombe held a good faith belief that the issues she complained of constituted violations of state and/or federal law.

185.   Defendants terminated Plaintiff's employment because she complained of suspected violations of the law.

186.   Alternatively, Defendants terminated Plaintiff's employment because she refused to engage in what she believed to be unlawful activity.

187.   Defendants' actions described above constitute termination in violation of public policy under Michigan law.

188.   As a direct proximate cause of Defendants' unlawful conduct, Plaintiff Bombe sustained and will continue to sustain injury and damages, including but not limited, to the deprivation of her rights under the U.S. Constitution.

**WHEREFORE**, Plaintiff requests entry of a judgment holding Defendants liable for compensatory damages including, but not limited to: back pay, front pay or reinstatement, embarrassment and humiliation, pain and suffering, harm to reputation and any other such relief that this Court deems just and equitable. Plaintiff Bombe also requests this Court award punitive damages and attorney's fees and costs.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this Honorable Court enter an order:

A.      Granting Plaintiff all available compensatory damages for economic injury, extreme mental and emotional distress, humiliation, outrage, economic damages, loss of employment opportunity, harm to reputation, loss of earning capacity, punitive and exemplary damages, and all other damages that Plaintiff is entitled to as a matter of law;

B.      Ordering appropriate injunctive relief requiring Defendants to immediately implement all necessary corrective measures, such as mandatory training of all supervisory personnel and employees, and an effective complaint process for harassment, to end the illegal harassment, discrimination, and retaliation described in the allegations above;

C.      Granting Plaintiff reasonably attorneys' fees and costs incurred in this litigation; and

D.      Granting Plaintiff all such further legal and equitable relief as this Court deems appropriate to make Plaintiff whole.

Respectfully submitted:

**MILLER COHEN, P.L.C.**

By: */s/ Yvonne E. Tirakian*
Keith D. Flynn (P74192)
Yvonne E. Tirakian (P86598)
*Attorneys for Plaintiff*
7700 Second Avenue, Suite 335
Detroit, MI 48202
(313) 964-4454
kflynn@millercohen.com
ytirakian@millercohen.com

Dated: October 22, 2024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TINA BOMBE,

        Plaintiff,

v.

LAPEER COUNTY COMMUNITY
MENTAL HEALTH, a Governmental
Agency, and BROOKE SANKIEWICZ
in her individual and official capacities,
jointly and severally,

        Defendants.

Case No.:       cv

Honorable

_____/

**MILLER COHEN P.L.C.**
Keith D. Flynn (P74192)
Yvonne E. Tirakian (P86598)
*Attorneys for Plaintiff*
7700 Second Avenue, Suite 335
Detroit, MI 48202
(313) 964-4454
kflynn@millercohen.com
ytirakian@millercohen.com

_____/

## DEMAND FOR TRIAL BY JURY

      NOW COMES Plaintiff TINA BOMBE, by and through her attorneys MILLER COHEN,

P.L.C. and hereby demands a trial by jury for all issues so triable.


[SIGNATURES NEXT PAGE]

Respectfully submitted:

**MILLER COHEN, P.L.C.**

By: */s/ Yvonne E. Tirakian*
Keith D. Flynn (P74192)
Yvonne E. Tirakian (P86598)
*Attorneys for Plaintiff*
7700 Second Avenue, Suite 335
Detroit, MI 48202
(313) 964-4454
kflynn@millercohen.com
ytirakian@millercohen.com

Dated: October 22, 2024